**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ANNA SCHOENBACH, a minor,
by her parents and next friends,
Andrew Schoenbach and Daryl Kade,
5319 28th Street, NW,
Washington, D.C. 20015,

and

ANDREW SCHOENBACH AND DARYL KADE,
5319 28th Street, NW,
Washington, D.C. 20015,

      Plaintiffs,

      v.

DISTRICT OF COLUMBIA,
A Municipal Corporation,
One Judiciary Square,
441 Fourth Street, NW,
Washington, D.C. 20001,

and

CLIFFORD JANEY, (officially as)
Superintendent,
District of Columbia Public Schools,
825 North Capitol Street, NE,
Washington, D.C. 20002,

      Defendants.

Civil Action No. _____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Preliminary Statement**

1.      This is an action for reimbursement of the costs incurred by plaintiffs Andrew Schoenbach and Daryl Kade ("the parents" or collectively as "the Schoenbachs") in educating their daughter, Anna, in a private school after the District of Columbia Public Schools ("DCPS") failed to provide her with a free appropriate public education ("FAPE") as required under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1487 (1997).

**Jurisdiction**

2.      This court has jurisdiction over this matter pursuant to the IDEA; the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794;  42 U.S.C. § 1983 ("Section 1983"); and 28 U.S.C. §§ 1331 and 1343.  Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.  Plaintiffs have exhausted their administrative remedies and appeal to this court from a decision of an Independent Hearing Officer of the District of Columbia Public Schools Student Hearing Office.

**Parties**

3.      Anna Schoenbach is a disabled child, as defined by the IDEA and Section 504, eligible to receive special education and related services.  At all times relevant to this action, this student and her parents resided in the District of Columbia.  The parents bring this action on Anna's behalf and in their own right.

4.      The District of Columbia is a municipal corporation that receives federal financial assistance, and is therefore required to comply with the IDEA and Section 504.

5.      Clifford Janey is the Superintendent of DCPS, and as such, is the public official charged with the responsibility for ensuring that DCPS complies with federal law as to the

education of disabled children. He is also responsible for ensuring that all disabled children in the District of Columbia receive a FAPE and that their rights to equal protection of the law and due process of law are respected. He is sued in his official capacity.

**Factual Allegations**

6.      Anna Schoenbach is an exceptionally bright fourteen-year-old child with Asperger's Syndrome, a high-functioning Autism-spectrum disorder, and Attention Deficit Hyperactivity Disorder, inattentive type ("ADHD"). Though her cognitive ability, as measured by IQ testing, is in the superior range, these disabilities greatly impact Anna's ability to succeed in school. Because of these disabilities, Anna requires special education and related services.

7.      Anna was born on February 1, 1991.

8.      During the 2004-05 school year, Anna was placed and funded by DCPS at the Kingsbury Day School ("Kingsbury"). She attended Kingsbury for the 2004-05 school year and received educational benefit from that placement.

9.      Over the course of the school year, Anna's needs evolved to the point where she required a more therapeutic and less restrictive environment for her education.

10.      On January 19, 2005, counsel for the parents informed DCPS of Anna's changing needs and requested that DCPS begin the process to change Anna's placement for the following school year.

11.      After much research into available programs, the Schoenbachs and Anna's therapist concluded that The Nora School ("Nora") is an appropriate placement for her. By a letter dated January 19, 2005, they informed DCPS that they were strongly considering a placement at Nora.

12.     When DCPS failed to respond to this letter, the Schoenbachs requested a due process hearing under the IDEA.  The DCPS Student Hearing Office scheduled a hearing for May 6, 2005.

13.     DCPS failed to propose any date to meet and discuss a change in placement until April 11, 2005, *after* the Due Process hearing had already been scheduled.

14.     On April 29, 2005 – one week before the Due Process hearing was scheduled to occur – the Multi-Disciplinary Team ("MDT") convened to discuss Anna's placement for the 2005-06 school year.

15.     Against the judgment of all other MDT members, DCPS proposed a contemplated, but not existing, Asperger's program at McKinley Tech High School ("McKinley") as Anna's placement for the 2005-06 school year.

16.     At the MDT meeting, DCPS was not able to provide any detailed information about the McKinley Asperger's program.  Instead, the DCPS representatives referred the parents to the McKinley website; however, this website also did not contain any information about the Asperger's program.

17.     At the MDT meeting, Anna's psychologist at Kingsbury, Dr. Kara Covington, expressed her disagreement with the proposed placement.  She stated that she was familiar with McKinley's layout and size of the student body, and that Anna would be overwhelmed and set up for failure in such a large school setting.

18.     The paucity of information provided by DCPS about the McKinley Asperger's program made it difficult for the Schoenbachs to determine the appropriateness of the program for Anna.

19.     Despite these roadblocks, the Schoenbachs researched the proposed placement to the best of their abilities.

20.     On May 3, 2005, Anna's mother spoke on the telephone with McKinley's Special Education Coordinator, Lawrencia Cole-Brown. Ms. Kade found Ms. Cole-Brown to be a likable administrator and teacher who seemed to care about her job. However, Ms. Cole-Brown admitted that she had only learned of the new Asperger's program at McKinley *that same day* and that she was unable to provide many details about the nature or structure of the program.

21.     On May 4, 2005, the Schoenbachs and Dr. Covington visited McKinley and spent three hours touring the school and meeting both regular education and special education teachers. The Schoenbachs were impressed by the apparent dedication and enthusiasm of the McKinley staff. However, they concluded that the size and layout of the school campus and the large student population would overwhelm Anna, and that she would shut down in such an environment.

22.     Furthermore, both Dr. Covington and Anna's therapist, Dr. Lisa Gilotty, advised that Anna would be unable to benefit academically and socially from either the self-contained Asperger's classes or the larger inclusion classes available at McKinley.

23.     The proposed program for Anna at McKinley is a more restrictive placement than Nora, where Anna can receive full-time specialized instruction in a full-time mainstream setting.

24.     Because the Schoenbachs were convinced that the McKinley program could not meet Anna's academic and social-emotional needs, and because they desired a less restrictive academic environment (as compared to an Asperger's program), they rejected the DCPS proposed placement at McKinley.

25.    A Due Process hearing convened on May 6, 2005, before Hearing Officer Terry Banks, and continued on June 14, 2005.

26.    The Hearing Officer committed reversible error by permitting into evidence the proposal for placement at McKinley, although this placement was made on the eve of the close of five-day disclosures, and although DCPS did not disclose this evidence within the deadline.

27.    At the hearing, DCPS was required to bear the burden of proving that it had appropriately identified and proposed how to address Anna's educational needs.

28.    DCPS failed to meet its burden of demonstrating that the proposed program and placement were appropriate for Anna.

29.    DCPS failed to present any expert testimony or written evidence to prove that the proposed placement is appropriate to meet Anna's needs.  Indeed, none of the DCPS witnesses had observed *or even met* Anna, leaving them completely dependent on her coding label and diagnosis to assess the appropriateness of the DCPS proposed placement, a placement that had not yet come into existence.

30.    In a decision dated July 11, 2005, the Hearing Officer determined that the parents were not entitled to placement and funding of Anna at Nora, based on a finding that DCPS offered Anna a program calculated to provide her educational benefit.

31.    The Hearing Officer also ruled that even if McKinley was found to be an *inappropriate* placement, the Schoenbachs would not be entitled to reimbursement for a placement at Nora because Nora does not offer special education services.

32.    The Hearing Officer's July 11, 2005, decision contains palpable errors of fact and law.

33.     At the Hearing, Dr. Covington provided compelling expert testimony regarding Anna's need for a therapeutic program that offers full-time specialized instruction in a full-time mainstream setting.

34.     Without cause or valid explanation, and without a contrary opinion on the record, the Hearing Officer improperly disregarded the testimonial expert opinion of Dr. Covington.

35.     Without cause or valid explanation, the Hearing Officer improperly disregarded the uncontested fact that Nora is a less restrictive placement than McKinley.

36.     Without cause or valid explanation, the Hearing Officer refused to admit into evidence compelling written testimony by Dr. Gilotty, despite the fact that it was submitted as part of a supplemental disclosure five business days in advance of the second hearing date on June 14, 2005.

37.     Without cause or valid explanation, the Hearing Officer improperly disregarded the testimonial and written expert opinions regarding the inappropriateness of the placement that DCPS proposed for Anna.

38.     The Hearing Officer erred by assigning the parents the burden of proving that the school system's proposed program and placement were inappropriate for Anna, when the burden should have been on DCPS to prove that the proposal was appropriate.

39.     The Hearing Officer erred by holding that DCPS met its burden of proving that its proposed program and placement were appropriate for Anna.

40.     David Mullen, the Head of Nora School, provided compelling written documentation regarding the appropriateness of Nora as Anna's placement, and regarding Nora's ability to accommodate Anna's IEP.

41.    The Hearing Officer erred by ignoring the disclosed list of documented accommodations that Nora provides to all students upon request, proffered as Administrative Exhibit AS-9.

42.    The Hearing Officer erred by holding that Anna could not be placed at Nora because it does not offer special education services.

43.    The Hearing Officer misinterpreted and misapplied federal and D.C. statutory and case law in his decision.

44.    The Hearing Officer abused his discretion by failing to award reimbursement to the Schoenbach family, when no binding legal authority barred his from doing so.

45.    Plaintiffs are aggrieved by the decision of the Hearing Officer.

46.    Plaintiffs have exhausted their administrative remedies.

**COUNT I**
(Failure to Provide Anna Schoenbach a FAPE and Due Process of Law)

47.    Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 46 above.

48.    The IDEA and D.C. law require defendants to provide Anna Schoenbach with a FAPE, including an appropriate educational program and placement.

49.    Section 504 requires substantial compliance with all procedural and substantive rights under the IDEA.

50.    Defendants failed to provide Anna Schoenbach with a FAPE, including an appropriate educational program and placement.

51.     Defendants' failure to provide Anna Schoenbach with a FAPE, including an appropriate educational program and placement, violates plaintiffs' rights under the IDEA, D.C. law, and Section 504.

## COUNT II
(Failure to Place and Fund Anna Schoenbach at Nora)

52.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 46 above.

53.     Federal and D.C. law requires that a school system which fails to provide a student with a FAPE must place and fund that student in an alternative unilateral placement which can provide that student with educational benefit.

54.     Section 504 requires substantial compliance with all procedural and substantive rights under the IDEA.

55.     Defendants failed to provide Anna Schoenbach with a FAPE, and failed to place and fund her at Nora.

56.     Defendants' failure to place and fund Anna Schoenbach at Nora violates the IDEA, D.C. law, and Section 504.

## COUNT III
(Erroneous Denial of Reimbursement)

57.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 46 above.

58.     Federal and D.C. law requires that a school system which fails to provide a student with a FAPE must place and fund that student in a private placement which can provide that student with educational benefit.

59.    Section 504 requires substantial compliance with all procedural and substantive rights under the IDEA.

60.    The Hearing Officer committed error, and violated plaintiffs' due process rights under the IDEA and D.C. law by failing to consider relevant, probative and admissible evidence and testimony regarding DCPS' responsibilities and obligations to Anna Schoenbach.

61.    The Hearing Officer failed to order defendants to place and fund Anna Schoenbach at The Nora School.

62.    The Hearing Officer's failure to order defendants to place and fund Anna Schoenbach at Nora violates the IDEA, D.C. law, and Section 504.

WHEREFORE, plaintiffs respectfully request that this Court:

1.    Issue judgment for plaintiffs and against defendants;

2.    Issue declaratory relief that defendants violated plaintiffs' rights under applicable law;

3.    Issue injunctive relief ordering defendants to place and fund Anna Schoenbach at The Nora School for the 2005-06 school year;

4.    Issue declaratory relief that The Nora School is Anna Schoenbach's current educational placement;

5.    Order defendants to pay plaintiffs' reasonable attorneys' fees and costs, including the fees and costs of this action; and

6.    Award any other relief that this Court deems just.

Respectfully submitted,

Michael J. Eig                #912733

Haylie M. Iseman             #471891

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740
Counsel for Plaintiffs

11