**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **A.S., et al.,** : | |
|       **PLAINTIFFS,** : | |
|       **v.** : | **Civil Action No.** 05-1591 (RMC) |
| **DISTRICT OF COLUMBIA, et al.,** : | |
|       **DEFENDANTS.** : | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Defendants, by counsel, respectfully move for summary judgment, pursuant to Fed. R. Civ. Pro. 56 and LCvR 56.1. The challenged administrative Hearing Officer's Decision ("HOD") was based on the evidence presented, and was correct in its conclusions.

A memorandum of points and authorities, statements of materials facts as to which there is no genuine issue in dispute, and proposed order are attached hereto.

                                              Respectfully submitted,

                                              ROBERT J. SPAGNOLETTI
                                              Attorney General for the
                                              District of Columbia

                                              GEORGE C. VALENTINE
                                              Deputy Attorney General
                                              Civil Litigation Division

                                              **/s/ Edward P. Taptich**
                                              EDWARD P. TAPTICH [012914]
                                              Chief, Equity Section II

2

February 6, 2006

**/s/_Carol E. Burroughs**
CAROL E. BURROUGHS [415432]
Assistant Attorney General
441 4th St., N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6520
Fax: 202-727-3625
Email:  carol.burroughs@dc.gov

Case 1:05-cv-01591-RMC     Document 9     Filed 02/06/2006     Page 2 of 15

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| A.S., et al., :<br>:<br>PLAINTIFFS, :<br>:<br>v. :<br>:<br>DISTRICT OF COLUMBIA, et al., :<br>:<br>DEFENDANTS. :<br>: | Civil Action No. 05-1591 (RMC) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiffs Andrew Schoenbach and Daryl Kade, parents of A.S., brought this case under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq*. The issues before this Court are whether the hearing officer erred in finding, based on the evidence presented at a due process hearing, 1) that DCPS had an appropriate I.E.P., and 2) DCPS had proposed an appropriate placement for A.S. at McKinley Tech ("Tech"), a school within the DCPS system with a full-time special education program for Asperger's students.

Under the IDEA, disabled students are entitled to a free, appropriate education ("FAPE"). *See* IDEA, 20 U.S.C. § 1412(a)(1). An individualized education program ("IEP") team, consisting of the disabled student's parents, teachers, and other education specialists, meet and confer in a collaborative process to determine how best to

3

accommodate the needs of the student to provide a FAPE. *See* 20 U.S.C. §1414(d)(1)(B). The IEP is the written statement from the meeting that includes, among other things, goals and instructional objectives, services to be provided, projections regarding the dates when such services will be offered, and criteria for evaluating whether instructional objectives are being met. *See* 20 U.S.C. §1414(d)(1)(A); *see also* 20 USCS § 1401(11).[1] Though the IDEA mandates that school districts consider input from the parent, it does not require that the parent be the final arbiter of what services are appropriate or that the parent's opinion should carry more weight than the other participants. *See* 20 U.S.C. § 1414(d) and (f).[2]

If the parents do not agree with the decisions of the IEP team, they can request a due process hearing before an impartial hearing officer. *See* 20 U.S.C. § 1415(f). The hearing officer's decision is final and reviewable by federal or local courts. *See* 20 U.S.C. § 1415(i).

### STANDARD OF REVIEW

**I. Summary Judgment**

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Although a court should draw

---

[1] 20 USCS § 1401(11): "The term 'individualized education program' or 'IEP' means a written 20 USCS § 1401(11) statement for each child with a disability that is developed, reviewed, and revised in accordance with section 614(d) [20 USCS § 1414(d)].

[2] 20 USCS § 1414 (f): "Each local educational agency or State educational agency shall ensure that the parents of each child with a disability are members of any group that makes decisions on the educational placement of their child."

4

all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To be genuine, the issue must be supported by evidence sufficiently admissible that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation. *See id.*; *see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

In cases such as this, the IDEA dictates that "the court [ ] shall receive the records of the administrative proceedings; [ ] shall hear additional evidence at the request of a party; and [ ] basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(B). When neither party has requested the court to hear additional evidence, the "motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997). Factual determinations of the hearing officer are to be accorded due weight.

## II. Review of administrative decisions under IDEA.

The IDEA provides for judicial review in state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing. 20 U.S.C. §1415(i)(2)(A). In conducting such review, the "preponderance of the evidence" standard of 20 U.S.C. §1415(i)(2)(B)(iii) "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review." *Board of Educ.of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). Stated differently, the court should not "reverse the

hearing officer's findings simply because [the court] disagree[s] with them." *Board of Educ. of Arlington Heights Sch. Dist. No. 25 v. Illinois State Board of Educ.*, 2001 U.S. Dist. LEXIS 6994, *12 (N.D. Ill., March 19, 2001).

The party challenging the hearing officer's determination bears the burden of persuading the court that the hearing officer was incorrect. *Angevine v. Smith*, 292 U.S. App. D.C. 346, 959 F.2d 292, 295 (1992); *Kerkam v. McKenzie*, 274 U.S. App. D.C. 139, 862 F.2d 884, 887 (1988); *Lyons v. Smith*, 829 F. Supp. 414, 417 (D.D.C. 1993). While the Court is authorized to make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Lyons*, 829 F. Supp. at 418. This deference results from Congress' recognition of the "specialized knowledge and experience" required to make complicated educational choices. *Rowley*, 458 U.S. at 207-08.

Accordingly, this Court must give the hearing officer's determinations "due weight," and Plaintiff, in order to prevail, must show by a "preponderance of the evidence" that the hearing officer was wrong. Because the HOD was appropriate in all respects challenged by Plaintiff (or favored them more than required by facts or law), Plaintiff cannot make the required showing, and summary judgment should be granted to Defendant.

**FACTUAL BACKGROUND**

Plaintiffs' minor child, A.S., was a fourteen-year-old student attending Kingbury Day School. ("Kingsbury"). Request, R. at 2.

On April 2, 2004, Kingsbury Day School ("Kingsbury") convened a Multidisciplinary Team ("MDT")/Individualized Education Program ("IEP") meeting. The MDT classified Petitioner with Autism (Asperger's Syndrome). It prescribed 8.25 hours per week of specialized instruction, two hours per week of psychological counseling, four hours per week of tutoring, 90 minutes per week occupational therapy ("OT"), 75 minutes per week of speech therapy, and 30 minutes per week of counseling, for a total of 27.5 hours per week. HOD, R at 9.

On March 24, 2005, Plaintiffs filed a Request for Hearing ("Request") alleging that the District of Columbia Public Schools ("DCPS") had failed to provide an appropriate placement for A.S. Plaintiffs indicated in their Request that A.S. had already been accepted to the Nora School for the 2005-2006 school year. Request, R. at 4.    .

On April 29, 2005, DCPS convened an MDT/IEP meeting. The MDT classified A.S. with autism and prescribed 22.75 hours of specialized instruction, 135 minutes per week of psychological services, 90 minutes per week of OT, and 60 minutes per week of speech and language therapy. Plaintiffs' representatives noted their disapproval of the IEP on the document: "Parents are not in agreement with service hours or time removed from general education setting. Parents request placement that can provide full-time specialized instruction in a mainstream setting – highly structured and small." " The parents further stated that they "'feel she needs to be with peers with similar intellectual capabilities. She'd like to be in a non 'special ed' program." HOD, R at 9; IEP, R at 36.

DCPS proposed placement at McKinley Tech ("Tech"), where a new special education program was being initiated for children with Aspberger's Syndrome. There

7

would be no more than six students in A.S.'s class, with a special education teacher and two teacher's assistants. HOD, R at 9

The parents objected to the size of the student body at Tech, 400 students, expressing concerns about A.S.'s ability to "relate" to a large student body. HOD, R at 9

A due process hearing was convened on May 6, 2005 and, because of lengthy testimony by the first two witnesses, was continued for further testimony on June 14, 2005. HOD, R. at 8

Tech's autism program will begin in September 2005. There will be a maximum 6:1 student to teacher ratio. The students will be on a diploma track. The goal will be to include students as much as possible in mainstream environments. A.S.'s teacher will be certified in special education. A psychologist will be assigned to work with Tech autistic and Aspberger's (sic) students. A.S. would be in a self-contained class limited to students classified with Aspberger's (sic) syndrome. As of June 14, 2005, only one other Aspberger's (sic) student had been accepted at Tech and that student will be in the 10th grade and is reading on a college level. A.S. will be a ninth grade student. HOD, R. at 10.

There will be three special education teachers at Tech, one dedicated to Aspberger's students. The Aspberger's program will be a full-time special education program. Currently there are 17 special education students at Tech, 5 classified with emotional disturbances and 12 with learning disabilities. Should A.S. be assigned to regular education classes in the future, a special education teacher would accompany her to those classes. Tech has a psychologist, a speech and language therapist and an occupational therapist to provide the related service prescribed in A.S.'s IEP.

8

Nora School where Plaintiffs have requested placement does not offer special education services.  HOD, R. at 10

The hearing officer held that DCPS had met its burden of proving that it provided an appropriate IEP for A.S.  A.S.'s 2004-2005 I.E.P.  provided a full-time special education environment at Kingsbury.  A.S.'s father testified that she had thrived in this environment.  Both the father and Dr. Covington from Kingsbury testified that A.S. was ready for a less restrictive environment.  The parties agreed that A.S. should remain in a small class environment and received individualized attention.  We know that she did well in a small-class, full-time special education environment.  The parents testified that her only experience in regular education setting—at Murch Elementary school-- was unsuccessful.  HOD, R at 11

Having determined that DCPS provided A.S. an appropriate I.E.P. and finding that the requirements of that I.E.P. included 22.5 hours of specialized instruction, 135 minutes per week of psychological services, 90 minutes per week of OT, the hearing officer was satisfied that Tech could provide these services and that A.S. would receive educational benefit in that environment.  Therefore, the Hearing Officer ruled that the Plaintiffs are not entitled to reimbursement for their expenses at Nora.  Moreover, the hearing officer held that even if he had found the proposed placement at Tech inappropriate, Plaintiffs would not have been entitled to reimbursement for Nora--a school which did not provide any special education services. HOD, R. 13 (citing *Berger v. Medina City School District*, 348 F3d. 513 (6th Cir. 2003)).

# ARGUMENT

I. **The Hearing Officer's conclusion that McKinley Tech is a proper placement for A.S. was supported by the evidentiary record.**

A.S.'s April 2005 I.E.P. prescribes 22.75 hours of specialized instruction, 135 minutes per week of psychological services, 90 minutes per week of O.T., and 60 minutes per week of speech and language therapy. Plaintiffs did not challenge the services prescribed in the I.E.P. only the setting in which they are to be provided. The experience to date is that A.S. has done poorly in a full-time regular education environment and well in a full-time special education environment. The McKinley Tech Asperger's Program will maintain the small class size and provide the individualized attention and all the services prescribed in the I.E.P. Because the IEP is the primary vehicle for providing a student with a free appropriate public education, whether or not a school can implement an IEP is key to a determination of appropriateness. *See Lopez v. District of Columbia,* C.A. No. 03- 1665 (JMF) (January 26, 2005) (Court citing *Burlington v. Massachusetts*, 471 U.S. 359, 368 (1985) as describing the IEP as the *modus operandi* of the IDEA). Defendants demonstrated that McKinley Tech could implement the IEP. HOD, R. at 10. The Nora School does not offer special education services. HOD, R. at 10.

II. **When both a private school placement and a public school placement are available to the child, DCPS is obligated to choose the public school placement.**

Even assuming *arguendo* that Plaintiffs had offered evidence that the Nora School was also an appropriate placement for A.S., DCPS would not be obligated to defer to the parent's preference. The D.C. regulations specifically state that DCPS is not required to forego its appropriate public school placement for a private school placement. *See* 5

10

D.C.M.R. § 3018.1 (2004). Further, DCPS does not have to conform to a parent's wishes in order to be sufficient or appropriate. *See Shaw v. District of Columbia*, 238 F. Supp. 2d 127, 139 (D.C. 2002) (stating that the IDEA does not provide for an "education . . . designed according to the parent's desires" and citing *Bd. of Educ. Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 207 (1982)).

Moreover, DCPS is not required to optimize educational benefit. *See Rowley*, 458 U.S. at 201 (Court holding that an appropriate education is one that "establishe[s] a basic floor of opportunity," such that school districts must provide disabled students an "educational benefit"). In other words, just because Plaintiff preferred a private school placement for A.S., does not mean that DCPS was required to provide one at its expense, given that DCPS offered an appropriate public school placement at McKinley Tech.

Even if DCPS's proposed placement had been found to be inappropriate, Plaintiffs would not be eligible for reimbursement of expenses associated with their unilateral private placement at the Nora School. Given that the Nora School provided no special education services, "unilateral private placement there cannot be regarded as 'proper under the Act.'" HOD at 13, citing *Berger v. Medina City School District*, 348, F.3rd 513, 522-23. (6th Cir 2003).

## CONCLUSION

The hearing officer's decision was proper in every way and should be upheld by this Court. Accordingly, this Court should grant Defendant's Motion for Summary Judgment, and deny Plaintiff's Cross-Motion for Summary Judgment.

11

        Respectfully submitted,

        ROBERT J. SPAGNOLETTI
        Attorney General for the
        District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General
        Civil Litigation Division

        **/s/ Edward P. Taptich**
        EDWARD P. TAPTICH [012914]
        Chief, Equity Section II


        **/s/_Carol E. Burroughs**
        CAROL E. BURROUGHS [415432]
        Assistant Attorney General
        441 4th St., N.W., Sixth Floor South
        Washington, D.C. 20001
        (202) 724-6520
        Fax: 202-727-3625

February 6, 2006        Email: carol.burroughs@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **A.S., et al.,** : | |
| : | |
| **PLAINTIFFS,** : | |
| : | |
| v. : | **Civil Action No.** 05-1591 (RMC) |
| : | |
| **DISTRICT OF COLUMBIA, et al.,** : | |
| : | |
| **DEFENDANTS.** : | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE DISPUTE**

1. On April 2, 2004, Kingsbury Day School ("Kingsbury") convened a Multidisciplinary Team ("MDT")/Individualized Education Program ("IEP") meeting. The MDT classified Petitioner with Autism (Asperger's Syndrome). It prescribed 8.25 hours per week of specialized instruction, two hours per week of psychological counseling, four hours per week of tutoring, 90 minutes per week occupational therapy ("OT"), 75 minutes per week of speech therapy, and 30 minutes per week of counseling, for a total of 27.5 hours per week. HOD, R at 9; IEP, R. at 102-124.

3. On March 24, 2005, Petitioner filed a Request for Hearing ("Request") alleging that the District of Columbia had failed to provide an appropriate placement for A.S. Request, R at 4.

4. On April 29, 2005, DCPS convened an MDT/IEP meeting. The MDT classified Petitioner with autism and prescribed 22.75 hours of specialized instruction, 135 minutes per week of psychological services, 90 minutes per week of OT, and 60 minutes per week of speech and language therapy. Petitioner's representatives noted

13

their disapproval of the IEP on the document: "Parents are not in agreement with service hours or time removed from general education setting. Parents request placement that can provide full-time specialized instruction in a mainstream setting – highly structured and small." HOD, R at 9; IEP at 36.

    5. DCPS proposed placement at McKinley Tech ("Tech"), where a new special education program was being initiated for children with Aspberger's Syndrome. There would be no more than six students in Petitioner's class, with a special education teacher and two teacher's assistants." HOD, R at 9

    6. The parents objected to the size of the student body at Tech, 400 students, expressing concerns about Petitioner's ability to "relate" to a large student body. HOD, R at 9.

    7. Tech's autism program will begin in September 2005. There will be a maximum 6:1 student to teacher ratio. The students will be on a diploma track. The goal will be to include students as much as possible in mainstream environments. A.S.'s teacher will be certified in special education. A psychologist will be assigned to work with Tech autistic and Asperger's students. A.S. would be in a self-contained class limited to students classified with Asperger's syndrome. HOD, R. at 10.

    8. There will be three special education teachers at Tech, one dedicated to Aspberger's students. The Aspberger's program will be a full-time special education program. Currently there are 17 special education students at Tech, 5 classified with emotional disturbances and 12 with learning disabilities. Should A.S. be assigned to regular education classes in the future, a special education teacher would accompany her to those classes. Tech has a psychologist, a speech and language therapist and an

occupational therapist to provide the related service prescribed in A.S.'s IEP. HOD, R. at 10.

9. Nora School where Plaintiffs have requested placement does not offer special education services. HOD, R. at 10

10. On July 8, 2005, the Hearing Officer issued his decision in the above-captioned case. HOD, R. at 6-12. In that decision, based on the evidence presented, he held:

a. That DCOP has met its burden that it provided an appropriate I.E.P for [A.S.}; HOD, R. at 11.

b. That A.S. would derive educational benefit from Tech. HOD, R. at 12

c. Plaintiffs are not entitled to reimbursement for their unilateral placement of A.S. at the Nora School. HOD, R. at 12.

Respectfully submitted,

        ROBERT J. SPAGNOLETTI
        Attorney General for the
        District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General
        Civil Litigation Division

        **/s/ Edward P. Taptich**
        EDWARD P. TAPTICH [012914]
        Chief, Equity Section II

        **/s/ Carol E. Burroughs**
        CAROL E. BURROUGHS [415432]
        Assistant Attorney General
        441 4th St., N.W., Sixth Floor South
        Washington, D.C. 20001
        (202) 724-6520
        Fax: 202-727-3625

February 6, 2006        Email: carol.burroughs@dc.gov