UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| A.S., et al., | : |
|     PLAINTIFFS, | : |
| v. | : Civil Action No. 05-1591 (RMC) |
| DISTRICT OF COLUMBIA, et al., | : |
|     DEFENDANTS. | : |

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to F.R. Civ. P. 56, the defendants, by counsel, hereby file their Opposition to Plaintiffs' Motion for Summary Judgment. Defendants request that their Motion for Summary Judgment be incorporated herein as if fully set forth. In addition, defendants ask the court to consider the following arguments:

**INTRODUCTION**

Plaintiffs Andrew Schoenbach and Daryl Kade, parents of A.S., brought this case under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq*. The issues before this Court are whether the hearing officer erred in finding, based on the evidence presented at a due process hearing, 1) that DCPS had an appropriate I.E.P., and 2) DCPS had proposed an appropriate placement for A.S. at McKinley Tech ("Tech"), a school within the DCPS system with a full-time special education program for Asperger's students.

**FACTUAL BACKGROUND**

Plaintiffs' minor child, A.S., was a fourteen-year-old student attending Kingbury Day School. ("Kingsbury"). Request, R. at 2.

On April 2, 2004, Kingsbury Day School ("Kingsbury") convened a Multidisciplinary Team ("MDT")/Individualized Education Program ("IEP") meeting. The MDT team classified Petitioner with Autism (Asperger's Syndrome). It prescribed 8.25 hours per week of specialized instruction, two hours per week of psychological counseling, four hours per week of tutoring, 90 minutes per week occupational therapy ("OT"), 75 minutes per week of speech therapy, and 30 minutes per week of counseling, for a total of 27.5 hours per week. HOD, R at 9.

On March 24, 2005, Plaintiffs filed a Request for Hearing ("Request") alleging that the District of Columbia Public Schools ("DCPS") had failed to provide an appropriate placement for A.S. Plaintiffs indicated in their Request that A.S. had already been accepted to the Nora School for the 2005-2006 school year. Request, R. at 4. .

On April 29, 2005, DCPS convened an MDT/IEP meeting. The MDT team classified A.S. with autism and prescribed 22.75 hours of specialized instruction, 135 minutes per week of psychological services, 90 minutes per week of OT, and 60 minutes per week of speech and language therapy. Plaintiffs' representatives noted their disapproval of the IEP on the document: "Parents are not in agreement with service hours or time removed from general education setting. Parents request placement that can provide full-time specialized instruction in a mainstream setting – highly structured and small." " The parents further stated that they "'feel she needs to be with peers with

similar intellectual capabilities.  She'd like to be in a non 'special ed' program." HOD, R at 9; IEP, R at 36.

DCPS proposed placement at McKinley Tech ("Tech"), where a new special education program was being initiated for children with Asperger's Syndrome.  There would be no more than six students in the program class, with a special education teacher and two teacher's assistants.  HOD, R at 9

The parents objected to the size of the student body at Tech, 400 students, expressing concerns about O.K.'s ability to "relate" to a large student body.  HOD, R at 9

A due process hearing was convened on May 6, 2005 and, because of lengthy testimony by the first two witnesses, was continued for further testimony on June 14, 2005.  HOD, R. at 8

Tech's autism program will begin in September 2005.  There will be a maximum 6:1 student to teacher ratio.  The students will be on a diploma track.  The goal will be to include students as much as possible in mainstream environments.  A.S.'s teacher will be certified in special education.  A psychologist will be assigned to work with Tech autistic and Asperger's students.  A.S. would be in a self-contained class limited to students classified with Asperger's syndrome.  As of June 14, 2005, only one other Asperger's student had been accepted at Tech and that student will be in the 10th grade and is reading on a college level.  A.S. will be a ninth grade student.  HOD, R. at 10.

There will be three special education teachers at Tech, one dedicated to Asperger's students.  The Asperger's program will be a full-time special education program.  Currently there are 17 special education students at Tech, 5 classified with emotional disturbances and 12 with learning disabilities.  When A.S. is assigned to

3

regular education classes, a special education teacher would accompany her to those classes. Tech has a psychologist, a speech and language therapist and an occupational therapist to provide the related service prescribed in A.S.'s IEP.

Nora School, a private school located in Silver Spring, Maryland, where Plaintiffs have requested placement does not offer special education services. HOD, R. at 10

The hearing officer held that DCPS had met its burden of proving that it provided an appropriate IEP for A.S. A.S.'s 2004-2005 I.E.P. provided a full-time special education environment at Kingsbury. A.S.'s father testified that she had thrived in this environment. Both the father and Dr. Covington from Kingsbury testified that A.S. was ready for a less restrictive environment. The parties agreed that A.S. should remain in a small class environment and received individualized attention. We know that she did well in a small-class, full-time special education environment. The parents testified that her only experience in regular education setting—at Murch Elementary School-- was unsuccessful. HOD, R at 11

Having determined that DCPS provided A.S. an appropriate I.E.P. and finding that the requirements of that I.E.P. included 22.5 hours of specialized instruction, 135 minutes per week of psychological services, 90 minutes per week of OT, the hearing officer was satisfied that Tech could provide these services and that A.S. would receive educational benefit in that environment. Therefore, the Hearing Officer ruled that the Plaintiffs were not entitled to reimbursement for their expenses at Nora. The hearing officer held that even if he had found the proposed placement at Tech inappropriate, Plaintiffs would not have been entitled to reimbursement for Nora--a school which did

not provide any special education services. HOD, R. 13 (citing *Berger v. Medina City School District*, 348 F3d. 513 (6th Cir. 2003)).

## ARGUMENT

In their Motion for Summary Judgment, Plaintiffs contend that the Hearing Officer erred by (1) allegedly ignoring expert testimony and evidence regarding A.S.'s need for a therapeutic program that offers full-time specialized instruction in a full-time mainstream setting; (2) allegedly ignoring evidence regarding the inappropriateness of the DCPS-proposed placement at McKinley Technology High School ("McKinley"); (3) allegedly disregarding that Nora is a less restrictive placement than McKinley; (4) allegedly refusing to admit into evidence written "testimony" by A.S.'s therapist; and (5) allegedly assigning the parents the burden of proving that the school system's proposed program and placement were inappropriate.

I. The Hearing Officer considered and properly rejected testimony that claimed that A.S. needed full-time specialized instruction in a full-time mainstream setting.

In reviewing the appropriateness of the proposed placement, the Hearing Officer must first look to the I.E.P. A.S.'s I.E.P., developed in draft by the Kingsbury staff before the April 29, 2005, meeting called for 22.5 hours of specialized instruction related to specific educational/behavioral goals. (R. at 60)  The special education teacher reviewed her math and reading strengths and then identified the impact her disability had on her educational performance in both of those areas. (R. at 37).   Each goal is identified, the provider of the specialized instruction is listed and then the short-term objectives, including mastery criteria or benchmarks, are set out.  For example, for Goal 2, the area addressed is "written expression." It states, "[A.] will demonstrate an increase in written

expression as measured by the mastery of the following objectives." The provider will be "Special Education Teacher." (R. at 39). Goal 1 is "Organizational" and states "[A.] will demonstrate improved organizational skills to enable her to start and complete and submit school assignments on time with 80% accuracy. Again, the provider is a special education teacher. McKinley had not only certified special education teachers to provide specialized instruction but also a special education teacher who was familiar with Asperger's and autism. R. at 25. Also McKinley could provide 1.5 hours a week of occupational therapy, 60 minutes per week of speech therapy, and 135 minutes per week of psychological counseling. R. at 36-37. In short, McKinley Tech could provide all of the specialized instruction and related services recommended for A.S.

Plaintiffs suggest that the placement decision had to be made by "consensus" of the MDT team or, alternatively, that DCPS was required to accept the placement supported by most of the MDT team. (R. 53-56). This is not the case. If consensus can't be reached, the ultimate choice of placement to provide the service identified in the I.E.P. belongs to the school system (LEA). The Kingsbury members of the MDT team had no authority to dictate a private placement over the policy choice of the L.E.A. Cathy Berry, as representative of the LEA was obligated to reject the parents and Kingsbury staff recommendation of Nora School if, in her professional opinion, Nora did not have the services outlined in the IEP which are required for A.S. to receive FAPE.[1] *White, et al. v. Ascension Parish School Board, et al.*, 343 F.3d 373 (5th Cir) (2003). Oddly enough, while the parent may have the option of proposing a program that does not meet the LEA's standards such as special education certification, DCPS cannot. "Under 20 U.S.C.

---

[1] Nora offered some "accommodations" but not the specialized education and related

6

§ 1401(a)(18)(D), the 'free and appropriate public education' required under IDEA must "meet the standards of the State educational agency." *T.R. v. Kingwood Township Board of Ed.*, 205 F.3rd 572 (3rd. Cir. 2000).

By plaintiff's own admission through its citation to a Notice of Interpretation on I.E.Ps (Motion at 16), the final decision belongs to the LEA:

> The IEP team should work toward consensus, *but the public agency has ultimate responsibility to ensure that the IEP includes the services that the child needs in order to receive FAPE*. It is not appropriate to make IEP decisions based upon a majority "vote." If the team cannot reach consensus, the public agency must provide the parents with prior written notice of the agency's proposals or refusals, or both, regarding the child's educational program, and the parents have the right to seek resolution of any disagreements by initiating an impartial due process hearing.
> 34 C.F.R. Part 300, Appendix A-Notice of Interpretations on IEPs, 64 Fed. Reg. 12,473 (1999) (emphasis added).

Plaintiffs contend that the school officials failed to consider the parents views and therefore denied them meaningful participation in what they term a "last minute" IEP meeting. Clearly, this is not the case. Cathy Berry testified that A.S.'s revised IEP was not due until April and that Kingbury controlled the scheduling process. (R. at 155-156) Also, the parents are clearly well-educated, articulate people who had experienced counsel present as well at the IEP meeting. Their objections were duly noted on the I.E.P. form. The fact that all the Kingbury members of the team supported the parent's request for a private rather than public placement is not surprising. Based on her experience that Kingsbury staff never support a public placement, Cathy Berry knew that any attempt to reach consensus would be futile.[2]

The plaintiffs contend that just because Cathy Berry started to research

---

service called for in the I.E.P. proposed by the Kingsbury staff.
[2] Plaintiff offers nothing to rebut Ms. Berry's statement that the Kingsbury staff never

appropriate placement options prior to the IEP meeting that she pre-determined the placement decision. To the contrary, Berry has an obligation to try to identify an appropriate public placement before agreeing to a private placement. 5 D.C.M.R. §3018.1 (2004). She contacted Vicky Williams, the citywide autism program coordinator, and learned about the new Asperger's program at McKinley Tech. After talking to Williams and Cole-Brown, she decided that McKinley was a good fit for A.S. (R. at 160)

> II. The Hearing Officer properly concluded that McKinley Tech was an appropriate placement.

One reason the Plaintiffs gave for rejecting DCPS's proposed placement at McKinley Tech was that the size of the building would be overwhelming (R. at 173) although they acknowledged that Kingbury was a large building. Plaintiffs also rejected the proposed placement on the size of the student body and all the "interactions she would have to handle…different peers and different teacher, switching classrooms although A.S. saw about ten different staff members at Kingsbury. R. at 174. The student-teacher ratio in the Asperger's Program at McKinley Tech is smaller than at Kingbury where A.S. had attended school for three years. It is significant to note that when the parents had the opportunity to tour McKinley after the I.E.P. meeting and before the hearing, they did not take A.S. along or make any other attempt to show her the school before the hearing although Ms. Cole-Brown offer to do that. [R. at 336] When asked why, Mr. Schoenbach indicated that "the main reason is it just wasn't a possibility. We would not send her to McKinley." (R. at 338) The Plaintiffs were dead set on A.S. going to private school no matter what DCPS offered.

---

support a public placement.

DCPS presented the testimony of its autism program coordinator, Victoria Williams, who has more than 24 years of special education experience and specific training and experience with autistic children. (R. at 211-249)  In addition, DCPS presented the testimony of Lawrencia Cole-Brown, the Special Education Coordinator at McKinley.  She has a master's degree in early childhood special education.  Ms Cole-Brown also has a 14-year-old son who is autistic. (R. at 265)    Ms. Cole-Brown also testified in detail about the McKinley program and the various steps the school was taking to allow the special education students to function in the regular classroom if they are able without the other students knowing that the were in a special education program.  She also testified about the location of the resource room and the availability of close-circuit television there if the students were not up to attending the regular classroom session. (R. at 280-283).  If A.S. is unable to start out in a full or partial inclusion setting, McKinley will provide separate instruction for her. (R. at 301).Counsel for DCPS also reviewed A.S.'s I.E.P. with Ms. Cole-Brown, who identified by name the service providers who would be working with A.S.  Both witnesses testified that McKinley was an appropriate placement for A.S.

### III. The Hearing Officer properly excluded Dr. Gilloty's "school consultation" report.

The Hearing Officer properly excluded the "school consultation" report that was created specifically to rebut the testimony of DCPS's witnesses.  The report was also generated by a person not identified as a witness.  Nor could she properly be designated to testify on behalf of Kingsbury because she is not member of their staff.  If Dr. Gilloty's opinion was so important and compelling, clearly plaintiffs should have listed

9

her as a witness. Considering this and the fact that counsel for DCPS could not cross-examine the doctor on her report, the Hearing Officer properly excluded the statement.

    IV    <u>McKinley offers a flexible school environment ranging from full-time special education to fully inclusive but providing needed services</u>.

Plaintiff claims that the Hearing Office ignored the fact that the Nora School is the least restrictive environment. The record indicates that the Hearing Officer did not ignore the fact that the Nora School was a fully mainstreamed environment; nor did he ignore the fact that they could not fulfill the requirement of A.S.'s IEP or A.S.'s past experience in a mainstream environment. The Hearing Office The least restrictive environment must also meet the educational needs of the child. The McKinley program offers a range of restrictiveness from total separation to full inclusion Moreover, the purpose of the hearing was to determine whether the proposed placement at McKinley was appropriate, not to compare the Nora School and McKinley. DCPS need only prove that A.S. could receive educational benefit from McKinley, not that McKinley was better than Nora. See *Rowley*, 458 U.S. at 201.

    V. <u>The Hearing Office did not shift the burden of proof to the parents to prove that the proposed placement was inappropriate for A.S.</u>

There is nothing in the record that supports plaintiffs' conclusory allegation that the hearing officer shifted the burden of proof to the parents to prove that the placement was inappropriate. After baldly asserting this contention, Plaintiffs immediately move on to assert that the Hearing Officer "failed to notice" that DCPS did not meet its burden of proof. Defendants contend that DCPS did meet its burden of proof. Moreover, failing to meet ones burden of proof is not the same as shifting the burden of proof to the other party.

Citing *Kroot, Mills v. Board of Educ. of Washington, D.C.*, 348 F. Supp 866 (D.D.C. 1972) a predecessor case to IDEA, Plaintiffs claim that just as the District must bear the "burden of proof as to all facts concerning the appropriateness of any placement, denial of placement or transfer. By that reasoning, DCPS also bears the burden of proving that the converse is true of the parent's unilateral placement." Kroot stands for no such thing. As previously stated, DCPS was required to prove that the IEP was substantively appropriate and if so, that the placement was appropriate. It does not have to prove that the Nora School is inappropriate. Moreover, the IEP was drafted by Plaintiff's own witnesses from Kingsbury.

Plaintiff also falsely claims that the proposed "program was non-existing." Ms. Cole-Brown testified about some of the developmental stages of putting the program together (R. at 223-224 ) All three of DCPS' witness all testified that the program was in place and it would start in September, 2005. The fact that final approval was not made until "a couple of weeks" before the July hearing is immaterial.

Plaintiffs also allege that DCPS failed to present testimony or evidence that the McKinley program met A.S.'s needs. This is patently not the case. Defendants presented specifics on how the program was going to be implemented through the testimony of Cathy Berry, Victoria Williams and Lawrencia Cole-Brown. Ms. Cole-Brown reviewed each goal of the I.E.P. in relation to instruction and related services provided at McKinley.

VI. <u>Plaintiffs are not entitled to reimbursement for the cost of Nora School</u>.

.    The Court in *M.C. v. Voluntown Board of Education*, explained that the Supreme Court in *Burlington* said that "whether the parents of a disabled child are entitled to

reimbursement for the costs of a private school turns on two distinct questions: first, whether the challenged IEP was adequate to provide the child with a free, appropriate public education; and second, whether the private educational services obtained by the parents were appropriate to the child's needs. 226 F.3rd 60, 66. (2d Cir. 2000) However, "If the challenged IEP was adequate, the state has satisfied its obligations under the IDEA and the necessary inquiry is at an end." Further, "Only if the court determines that a challenged IEP was inadequate should it proceed to the second question." In Carter, the Supreme court merely "held that once the Burlington two-factor test is satisfied, parents can obtain reimbursement for privately obtain educational service, even if those services do not fully satisfy the state educational agency's standards." Id.   The Hearing Officer found that DCPS had met its burden of proof.

    VII.    <u>The Court should not consider the "additional evidence" of Dr. Gilloty's report which was properly excluded or the A.S. "report card" for this school year</u>.

Dr. Gilloty's report should not be considered by this court because it is hearsay. If Plaintiffs intended to submit "additional evidence" they should have elected to have an evidentiary hearing and called the witness so that she could be cross-examined by counsel for Defendants. The this Court considers the report, little weight should be given to it. Dr. Gilloty did not tour McKinley Tech or talk to the teachers and administrators about the program. She has no real way of knowing how A.S. would have reacted to McKinley's beautiful building and high-tech equipment to which might have "spoken" to A.S.'s scientific bent.

The Court should also the grade and narrative report from the Nora School for A.S. It is also hearsay. Moreover, it is immaterial whether or not A.S. is doing well at

12

the Nora School. It has as nothing to do with whether DCPS' proposed placement at McKinley was appropriate.

## **CONCLUSION**

The hearing officer's decision was proper in every way and should be upheld by this Court. Accordingly, this Court should grant Defendant's Motion for Summary Judgment, and deny Plaintiff's Cross-Motion for Summary Judgment.

    Respectfully submitted,

    ROBERT J. SPAGNOLETTI
    Attorney General for the
    District of Columbia

    GEORGE C. VALENTINE
    Deputy Attorney General
    Civil Litigation Division

|  |  |
|---|---|
|  | **/s/ Edward P. Taptich** |
|  | EDWARD P. TAPTICH [012914] |
|  | Chief, Equity Section II |
|  |  |
|  | **/s/ Carol E. Burroughs** |
|  | CAROL E. BURROUGHS [415432] |
|  | Assistant Attorney General |
|  | 441 4th St., N.W., Sixth Floor South |
|  | Washington, D.C. 20001 |
|  | (202) 724-6520 |
|  | Fax: 202-727-3625 |
| March 20, 2006 | Email: carol.burroughs@dc.gov |