**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANNA SCHOENBACH, *et al.*, | |
| Plaintiffs, | |
| v. | C.A. No. 05-1591 (RMC) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

**REPLY TO DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I.    INTRODUCTION.

In the opposition to the Schoenbachs' motion for summary judgment, defendants District of Columbia Public Schools ("DCPS" or "the school system") have sought an order affirming the Hearing Officer's administrative decision in this matter that, if granted, would work incalculable damage to Anna Schoenbach's right to a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*  As is discussed below, DCPS urges arguments to this Court in open conflict with the sworn testimony of its own witness at the administrative hearings; these arguments (1) literally ignore federal law, as specifically set forth in the Code of Federal Regulations, (2) run directly contrary to the mandate of placement in the Least Restrictive Environment under the IDEA, and (3) ask the Court to essentially re-write significant parts of Supreme Court holdings in the landmark *Burlington* and *Carter* cases.  *Burlington Sch. Comm. v. Department of Educ.,* 471 U.S. 359 (1985) and *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 8 (1993).  Moreover, the school system asks this Court to affirm an administrative decision that simply ignores or blatantly flaunts the unchallenged expert opinions of those experts who actually know this student.

## II.     DEFENDANTS FAIL TO ACKNOWLEDGE THE CONSENSUS AT THE IEP MEETING.

In their opposition, defendants argue that, "If consensus can't [*sic*] be reached, the ultimate choice of placement to provide the services identified in the I.E.P. belongs to the school system (LEA)." Opposition at 6. Whether the school system's position is or is not correct, it wholly ignores the factual record before the Hearing Officer, based upon the school system's own testimony. There is no question that at the meeting at which the parents, school staff, and DCPS representative developed Anna's Individualized Education Program ("IEP"), **the IEP team reached a consensus, and that this consensus was to place Anna at the Nora School.** The DCPS placement specialist, Cathy Berry, explicitly testified to this consensus at the Due Process Hearing. In response to the question, "[T]he consensus of the group at the IEP meeting was, clearly, that [Anna] should go to Nora, right?" she answered, "Yes." Testimony of Cathy Berry, May 6, 2005 Tr. at 48 and 55-56.[1]

There can be no serious question that the reaching of a consensus by an IEP team completes the work of that team and leads to the placement embodied in the consensus of the group. 34 C.F.R Part 300, Appendix A – Notice of Interpretations on IEPs, 64 Fed. Reg. 12,473 (1999). Defendants do not even dispute this controlling law. Rather, they seem to argue that a consensus requires some sort of unanimous vote. Of course, were that true, the federal law would clearly dictate so. In instead requiring a consensus (rather than unanimity), Congress asked IEP team to apply a different standard. The definition of consensus is, "A *general agreement or accord*" or, "An opinion or position reached by a group as a whole." *The American*

---

[1]     This citation is to the transcript of the administrative hearing, which took place on May 6, 2005 and July 14, 2005. All references thereto are cited as "[date] Tr. at __."

2

*Heritage Dictionary* (4th ed., 2000).  Given this definition, and the unequivocal testimony of the DCPS witness, it is nothing less than disingenuous for DCPS to continue to submit that the IEP team failed to reach a consensus.

Moreover, even if the IEP team had been unable to reach a consensus, as DCPS so incorrectly contends, defendants still denied these parents their basic Due Process rights by preventing their meaningful parental participation at the IEP meeting.  A school system cannot steadfastly refuse to make a parentally-requested placement before first *considering* the views of the parents and their experts, particularly when those views are properly presented at an IEP meeting.  However, that is precisely what occurred here, as revealed by the school system's own argument.

Defendants contend that DCPS' Ms. Berry allowed the parents to participate meaningfully in the meeting before reaching ultimate her decision to propose a placement for Anna at McKinley High School ("McKinley").  However, defendants have offered no evidence that such parental participation occurred.[2]  On the contrary, they state that, "Cathy Berry knew that any attempt to reach a consensus would be futile" and that "[the parents'] objections were duly noted on the I.E.P. form."  Opposition at 7.  These statements certainly do not constitute evidence that the parents were equal participants in the meeting.[3]  In fact, Ms. Berry's statements

---

[2]     The defendants argue that, "the parents are clearly well-educated, articulate people who had experienced counsel present as well at the IEP meeting."  Opposition at 7.  However, the issue is not whether or not the parents were represented and able to articulate their objections or feelings about Anna's education.  The question is whether or not DCPS **considered the parents' views as equal members of the IEP team, as is required by law.**  And, the answer to that questions is clearly no.

[3]     DCPS suggests that making note of a parent's objection on the IEP constitutes parental participation.  Clearly, the IDEA requires more than this.

plainly indicate that the school system approached the IEP table (in the personification of Ms. Berry), with a pre-determined decision to propose the McKinley placement. With that illegal pre-determination, Ms. Berry concluded that there was no reason to allow the parents a chance to participate equally at the meeting, and then to attempt to reach a consensus.

The IDEA requires more than a simple acknowledgment of the parents' conflicting views. In fact, in an earlier case with this very same student, this Court found that DCPS had proposed an inappropriate IEP, yet *still* denied the parents any reimbursement, based on it finding that they had failed to state their objections to the IEP team. *Schoenbach v. District of Columbia*, 309 F. Supp.2d 71 (D.D.C. 2004). The Court ruled that the, "IDEA expects strong parental input at IEP meetings. . . . Such input is critical in assuring that disabled children get the services they need." The Court continued, "but parents must talk, or complain, when given the chance. Timely input can allow a school district to respond meaningfully to parental requests." *Id.* at 89. Now, but a few years later, these same parents who were penalized for their failure to speak up at an IEP meeting, have done what the Court suggested they do – advocate for their daughter by expressing their dissatisfaction with a particular proposal and seeking a placement that is appropriate.[4] If the IDEA expects strong parental input at the IEP meetings, that input **must** be weighed accordingly;

---

[4]    In their opposition, defendants state that the plaintiffs were "dead set on A.S. going to private school no matter what DCPS offered." Opposition at 8. This statement is not only incorrect, but is completely unsupported by testimony or exhibits. On the contrary, these parents went to extraordinary lengths just to get this last-minute placement proposal from DCPS, and then to observe the placement in the days prior to the hearing. There is nothing in the record to even *suggest* that the Schoenbachs acted with closed minds. Mr. Schoenbach testified at length about why Anna did not visit McKinley and why it was so clearly not an option for her. To imply that these parents were anything less than cooperative and open-minded throughout this process is unfair and ignores the facts in the record.

4

if that input leads to the team's consensus to propose a specific placement, the team must do so, and the Congressionally-mandated process has worked as intended.

III.    **DEFENDANTS FAIL TO RESPOND TO THE PARENTS' ARGUMENT THAT NORA IS THE LEAST RESTRICTIVE ENVIRONMENT.**

As previously discussed in our motion for summary judgment, the IDEA requires that Anna receive her education in the least restrictive environment ("LRE") in which her needs can appropriately be met. The Fourth Circuit has stated that "mainstreaming of handicapped children into regular school programs where they might have opportunities to study and to socialize with nonhandicapped children is not only a laudable goal but is also a requirement of the Act." *Devries by DeBlaay v. Fairfax County Sch. Bd.,* 882 F.2d 876, 878 (4th Cir. 1989). Therefore, DCPS was required to propose the least restrictive environment appropriate for Anna to receive her education.

According to those experts who know Anna personally and understand her complex and unique needs, she requires full-time specialized instruction in a small, highly structured, mainstream setting. The parents identified the Nora School as the least restrictive environment in which Anna could receive these full-time services in a full-time mainstream setting. Nora offers precisely what Anna needs: small classrooms with a mainstream population and teachers who can provide specialized education. The DCPS-proposed placement at McKinley is a much more restrictive environment;[5] therefore, by law, DCPS was required to place Anna at Nora.

---

[5]    It is important to note that, even before this Court, DCPS continues to present conflicting information about McKinley. According to defendants, at McKinley, Anna would *only* be in self-contained classes limited to students with only Asperger's syndrome. Opposition at 3. However, at the hearing, DCPS presented testimony that Anna would be included in general education classes. July 14, 2005 Tr. at 46-51.

5

However, defendants continue to ignore the LRE requirement of the IDEA, and even claim that, "the purpose of the hearing was to determine whether the proposed placement at McKinley was appropriate, not to compare the Nora School and McKinley." Opposition at 10. What the defendants fail to recognize is that embedded in the question of whether McKinley is appropriate, is *whether McKinley is the **least restrictive environment** for Anna*. The LEA is *required by law* to answer this question. The answer is clear. Nora is the LRE and DCPS was required by law to place her accordingly.

### IV.    DEFENDANTS FAIL TO PROVIDE A REASONABLE ARGUMENT AS TO WHY DR. GILOTTY'S REPORT SHOULD BE EXCLUDED.

In their opposition, defendants claim that in order for this Court or the Hearing Officer below to consider Dr. Lisa Giloty's report, Dr. Gilotty would have had to be present at the hearing, in order that she could be cross-examined by opposing counsel. Opposition at 9-10. Remarkably, defendants provide no authority to support this statement. We submit that no such authority exists. Dr. Gilotty's report was properly disclosed in accordance with the five-day disclosure rule of the IDEA. 20 U.S.C. § 1415(f)(2)(A) and 34 C.F.R. § 300.509 (b). The letter provides essential information about Anna and her school needs; its exclusion has been highly prejudicial to the parents.

6

Now, in addition to Dr. Gilotty's report (that we asked this Court to consider in our motion for summary judgment),[6] we also request the Court to consider the attached information issued by DCPS regarding the McKinley program (a copy is attached to this Reply as "Exhibit 1").[7] This additional evidence was made available to the parents on January 9, 2006 by the Office of the Superintendent of DCPS, and includes both a description of the McKinley program, and statistics about the program. It reveals that there were only *two* students enrolled in the McKinley program with one teacher, whose certification status is "provisional." This reality is inconsistent with the information about the McKinley program that DCPS previously provided to the parents, and also contradicts the testimony of the DCPS witnesses at the administrative hearing. If nothing else, it provides confirming support as to why McKinley is not an appropriate placement for Anna.

## V.    Defendants Incorrectly Assert that Nora Does Not Provide Special Education.

In his decision, the Hearing Officer cites *Berger v. Medina City Sch. Dist.,* 348 F.3d 513 (6th Cir. 2003), to support his finding that, because Nora provides no specialized instruction, parents are not eligible for reimbursement. Defendants also contend that while Nora offers

---

[6]    In an attempt to keep out the additional evidence regarding Anna's success at the Nora School during the 2005-06 school year, defendants state that, "it is immaterial whether or not A.S. is doing well at the Nora School. It has nothing to do with whether DCPS' proposed placement at McKinley was appropriate." Opposition at 12-13. This is wrong. By proposing the McKinley program, DCPS continues to assert that Anna is in need of a more restrictive environment than Nora. It is therefore highly relevant that Anna has not only succeeded, but blossomed in her less restrictive placement at Nora.

[7]    This information should be considered as additional evidence which this Court is able to consider under the IDEA, 20 U.S.C. § 1415(e)(2), to supplement the administrative record. It is information that was not available at the time of the administrative hearing and is necessary to give this Court a more comprehensive view of the case.

"accommodations," it does not provide special education services and is therefore not an appropriate placement.  Opposition at 4 and fn 1.  *See also*, Hearing Officer's Decision at 8.  Both the Hearing Officer and the school system are mistaken.

The IDEA defines special education as "specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability."  Specially designed instruction "means, adapting, as appropriate to the needs of an eligible child under this part, the content, methodology, or delivery of instruction  –  To address the unique needs of the child that result from the child's disability." 34 C.F.R. § 300.26(a)(3).

In *Berger*, the Sixth Circuit held that "a unilateral private placement cannot be regarding as 'proper under the Act' when it does not, at a minimum, provide some element of special education services . . . ." 348 F.3d at 523.   If this is the correct standard, then Nora certainly meets it.  Once again, the record is clear:  Mr. Schoenbach addressed this issue, stating that Anna "needs specialized instruction, but what specialized instruction means to us is it means having a teacher who is tuned into her.  It means having small class size, no more than ten . . . it means being able to mold the curriculum for her, not just saying there is the curriculum but having a mold . . . ." July 14, 2006 Tr. at 100.

Nora is certainly providing "specialized instruction" to Anna, as the federal regulations define this term.  The Nora staff have adapted Anna's education to ensure that she makes academic progress, she receives her specialized instruction in a small classroom environment with appropriate supports to meet her unique needs, and the staff members are also providing her

a number of accommodations. *See* AS-9.[8] Thus, the school is providing Anna with special education through the use of specialized instruction to meet her unique needs. The Hearing Officer was wrong to hold otherwise.

Finally, as we have previously stated, a school's status as "non-certified" is not a bar to reimbursement. The Supreme Court has firmly held that, a "[p]arents' failure to select a state-approved program in favor of an unapproved option does not itself bar reimbursement." *Carter*, 510 U.S. at 8. The defendants offer no counter-argument to this fact, and, indeed, there is none.

**VI.    CONCLUSION.**

Defendants have not raised any issue of material fact that should bar the parents' claim. Therefore, we continue to respectfully request that this Court grant summary judgment in favor of the parents, vacating the decision of the Hearing Officer and ordering defendants to reimburse the cost of Anna's placement at the Nora School, retroactive to the start of the 2005-06 school year.

Respectfully submitted,

/s/ (filed electronically)
Michael J. Eig        #912733

/s/ (filed electronically)
Haylie M. Iseman      #471891
MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740
Counsel for Anna Schoenbach and her parents

---

[8]    These citations are to the numbered exhibits contained in the administrative record. Throughout the administrative proceedings and herein, plaintiffs' exhibits are referred to as "AS-__" and defendants' exhibits are referred to as "DCPS-__."