UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANNA SCHOENBACH, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )  Civil Action No. 05-1591 (RMC) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION**

Andrew Schoenbach and Daryl Kade (collectively the "Schoenbachs") are the parents of Anna, a disabled child. Anna is eligible to receive special education services pursuant to the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §§ 1400-1487. The Schoenbachs filed this suit against the District of Columbia and Clifford Janey, in his official capacity as Superintendent of the District of Columbia Public Schools (collectively "DCPS"), asserting that DCPS failed to provide a free appropriate public education ("FAPE"), *see* 20 U.S.C. § 1412(a)(1)(A), to Anna and that DCPS was required to reimburse them for tuition at a private school. The parties have filed cross motions for summary judgment. Because DCPS offered placement in a public school program that provides the special education services recommended for Anna and the private school where the Schoenbachs placed Anna does not provide such services, DCPS is not obligated to reimburse the Schoenbachs for the private school tuition they have paid. The Court will deny the Schoenbachs' motion for summary judgment and will grant DCPS's motion for summary judgment.

## I. BACKGROUND

### A. IDEA

Under the IDEA, disabled students are entitled to a FAPE consisting of "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 188-89 (1982); *see* 20 U.S.C. § 1412(a)(1)(A). Congress' specific intent is evident on the face of the statute:

> The purposes of this chapter are —
>
>   (1)(A) to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living;
>
>   (B) to ensure the rights of children with disabilities and parents of such children are protected;
>
>   . . . .
>
>   (4) to assess, and ensure the effectiveness of, efforts to educate children with disabilities.

20 U.S.C. § 1400(d)(1)(A) & (B), 1400(d)(4).

When a disabled student is identified, a multi-disciplinary team ("MDT") consisting of the parents and teachers of the disabled student, a representative of the local educational agency with knowledge about the school's resources and curriculum, and other educational specialists as needed, confers to develop an individualized education program ("IEP") for that student. *Reid v. Dist. of Columbia*, 401 F.3d 516, 519 (D.C. Cir. 2005) (citing 20 U.S.C. §§ 1412(a)(4), 1414(d)). The IEP is the "*modus operandi*" of the IDEA. *Sch. Comm. of Burlington v. Dep't of Educ.*, 471

U.S. 359, 368 (1985). The IEP is a written statement that includes goals and instructional objectives for the student's education, services to be provided, projections regarding the dates on which such services are to be offered, and criteria for evaluating whether instructional objectives are met. 20 U.S.C. § 1414(d)(1)(A); *see also* 20 U.S.C. § 1401(14). "[T]he IEP must, at a minimum, provide personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction . . . . If no suitable public school is available, the [school system] must pay the costs of sending the child to an appropriate private school." *Reid*, 401 F.3d at 519. Additionally, the IEP team may determine that in order to benefit from special education, the student requires "related services," non-educational, supportive services such as physical and occupational therapy and psychological counseling. *See* 34 C.F.R. § 300.24(a).

The statute contains a number of procedural safeguards. Parents of a disabled child must be notified in writing of any proposed change in "the identification, evaluation, or educational placement of the child" and are permitted to challenge any matter relating to such change. 20 U.S.C. § 1415(b)(3) & (b)(6). Parents can have their complaints considered in "an impartial due process hearing." *Id.* § 1415(f). Once a hearing is held and an administrative determination is made, a party may appeal the decision of the hearing officer to federal district court. *Id.* § 1415(i)(2)(A).

### B. Factual Background

The Schoenbachs' daughter, Anna, has been diagnosed with Asperger's Syndrome, a high-functioning autism spectrum disorder. In the past, Anna attended Murch Elementary School where she was in a regular education program. Murch Elementary had large classes, and Anna did not do well there. Administrative Record ("AR") at 11, Hearing Officer's Decision. On April 2,

2004, a MDT met and developed an IEP for Anna. *Id*. at 9. The IEP prescribed 8.25 hours per week of specialized instruction, 2 hours per week of psychological counseling, 4 hours per week of tutoring, 90 minutes per week of occupational therapy, 75 minutes per week of speech therapy, and 30 minutes per week of counseling. *Id*. at 9. In order to implement the IEP, Anna was placed at Kingsbury Day School for the 2004-2005 school year in a full-time special education program. *Id*. at 11. According to her father, Anna thrived in this environment. *Id*. The Schoenbachs believed that she had evolved to the point where she required a less restrictive environment for her education. Pls.' Mot. for Summ. J. at 3.

On April 29, 2005,[1] a MDT met again to develop Anna's IEP for the 2005-2006 school year. The Schoenbachs attended the meeting together with their attorney. The IEP for the 2005-2006 school year prescribed 22.75 hours per week of specialized instruction, 135 minutes per week of psychological services, 90 minutes per week of occupational therapy, and 60 minutes per week of speech and language therapy. AR at 9. Anna's parents disagreed with the IEP and noted their objection on the IEP document as follows: "Parents are not in agreement with service hours or time removed from general education setting. Parents request placement that can provide full-time specialized instruction in a mainstream setting — highly structured and small." *Id*. The Schoenbachs felt that Anna should be placed with peers of similar intellectual capabilities,[2] in a non-special education program. *Id*.

---

[1] At that time, Anna was fourteen years old.

[2] Anna's cognitive ability, as measured by IQ testing, is in the superior range. Pls.' Mot. for Summ. J. at 3.

At the April 29, 2005, IEP meeting, DCPS proposed placing Anna at McKinley Tech Senior High School ("McKinley"), a DCPS public school, in a special education program for children with Asperger's Syndrome (the "McKinley Program"). The McKinley Program would be newly implemented in the 2005-2006 school year. It would have no more than six children per class, with a special education teacher and two teacher assistants. *Id*. at 9. The Schoenbachs and the Kingsbury staff objected to this placement because the student body size at McKinley was 400 students, and they felt that Anna would be overwhelmed by this large size. *Id*. at 9-10. Anna has difficulty with social interactions. *Id*. at 10. Instead of placing Anna at McKinley, the Schoenbachs proposed to place Anna at The Nora School ("Nora"), a small private school. Nora does not offer special education services. AR at 10, Hearing Officer's Decision (citing Schoenbachs' stipulation in Parent's Memorandum of Points and Authorities at 8).

The Schoenbachs requested a due process hearing. The hearing was held on May 6, 2005, and was continued to June 14, 2005. The Hearing Officer rendered his decision on July 8, 2005. The Hearing Officer held that (1) Anna would derive educational benefit at McKinley and thus it was an appropriate placement under the IDEA, AR at 12; and (2) even if McKinley were an inappropriate placement, the Schoenbachs were not entitled to tuition reimbursement for the costs at Nora because Nora does not provide special education services or the related services designated in Anna's IEP. *Id*. at 13.

The Schoenbachs refused to send Anna to McKinley and instead enrolled her at Nora for the 2005-2006 school year. The Schoenbachs appealed the Hearing Officer's decision to this Court, claiming that Anna's placement at Nora is appropriate under the IDEA and requesting tuition reimbursement. The parties now have filed cross motions for summary judgment.

## II. LEGAL STANDARDS

Federal district courts have original jurisdiction over civil actions arising under federal statutes. 28 U.S.C. § 1331. Here, the Schoenbachs brought suit under the IDEA, a federal statute. As this case presents a question of federal law, this Court has original jurisdiction.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the Court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

In cases under the IDEA, a district court "shall review the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). Accordingly, "judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which the courts generally are confined to the administrative record and are held to a highly deferential standard." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993). While the IDEA requires district courts to make their own independent determination based on a preponderance of the evidence, courts should not substitute "their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206. The Act's requirement that a reviewing court "receive the records of the administrative proceeding" requires courts to give "due weight" to the hearing officer's determinations, *id.*, and to "afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Lyons v. Smith*, 829 F. Supp. 414, 417 (D.D.C. 1993). The party challenging the administrative decision bears the burden of persuading the court that a different result should have been reached. *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988).

If neither party requests that the court hear additional evidence, then the court may determine the case based on the administrative record on summary judgment. *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997). Here, neither party has requested that the Court hear additional evidence; thus, the Court bases its decision on a review of the administrative record.

## III. ANALYSIS

"[P]arents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *Burlington*, 471 U.S. at 373-74. If the parents prevail on review, they are entitled to reimbursement. If the court determines that the IEP and placement proposed by school officials was appropriate, they are not entitled to reimbursement. *Id*. at 374. In this case, the Schoenbachs contend that the placement of their daughter at McKinley would have deprived her of FAPE and that her placement at Nora, a private school, was proper under the IDEA. They assert that DCPS should reimburse them for the costs of sending Anna to Nora.

When reviewing an administrative decision under the IDEA, the court must determine whether the procedural requirements were met and whether the IEP, including the student's placement, was reasonably calculated to enable the child to receive educational benefits. *Shaw v. Dist. of Columbia*, 238 F. Supp. 2d 127, 134 (D.D.C. 2002) (citing *Rowley*, 458 U.S. at 206-07).

### A. Procedural Requirements

Without citing to any reference in the record, the Schoenbachs contend that the Hearing Officer misallocated the burden of proof. Under District of Colombia law, DCPS bears the burden of proving that the proposed placement is adequate to meet the educational needs of the student. D.C. Mun. Regs. tit. 5, § 3030.3.[3] The Schoenbachs assert that DCPS could not have met

---

[3] The Supreme Court's recent ruling in *Schaefer ex rel. Schaefer v. West*, ___ U.S. ___, 126 S. Ct. 528, 536 (2005), does not affect the D.C. rule allocating the burden of proof to DCPS at the administrative level. While the Supreme Court in *Schaefer* held that the burden of proof is on the party seeking relief, the Court declined to decide whether a state could override this rule and put the burden of proof on the school district. *See Gellert v. Dist. of Columbia Pub. Schs.*,

its burden of proof at the administrative level because the McKinley Program was new and not enough information was known about it.

Nothing in the record indicates that the Hearing Officer erroneously placed the burden of proof on the Schoenbachs instead of on DCPS. Moreover, the evidence shows that DCPS met its burden of proving that the proposed placement in the McKinley Program was adequate to meet Anna's educational needs. Despite the fact that the McKinley Program had not yet been implemented, the testimony at the due process hearing indicated that the Program would meet Anna's needs under her IEP. Anna's IEP prescribed that she receive special education 22.75 hours per week and related services, including psychological services, occupational therapy, and speech and language therapy. Victoria Williams, DCPS's coordinator of services for students with autism,[4] testified that the McKinley Program would be limited to six students with Asperger's Syndrome, Tr. 218, 249, and that it would be staffed with one certified special education teacher and two teaching assistants.[5] Tr. 218, 223-225. Further, all of the related services set forth in Anna's IEP would be made available at McKinley. Tr. 226-27. Thus, placement in the McKinley Program was reasonably calculated to provide an educational benefit to Anna.

---

No. 05-19, 2006 WL 1363851, at *10 n.3 (D.D.C. May 18, 2006) (citing *Schaffer*, 126 S.Ct. at 537). In any event, the Schoenbachs correctly point out that DCPS bore the burden of proof at the administrative level.

[4] Ms. Williams was in charge of implementing the McKinley Program.

[5] Currently, the McKinley Program only has two students. Thus, it is staffed with a single special education teacher and the teaching assistants have been reassigned. Defs.' Reply, Att. 1, Decl. of Victoria Williams.

The Schoenbachs also contend that DCPS violated the procedural requirements of the IDEA because DCPS afforded them no meaningful input. They allege that DCPS had predetermined Anna's placement at McKinley. Predetermination of school placement constitutes a procedural violation of the IDEA. *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 857 (6th Cir. 2004) (citing *Spielberg ex rel. Spielberg v. Henrico County Pub. Schs.*, 853 F.2d 256 (4th Cir. 1988)). In *Spielberg*, the school district decided to change the student's placement before drafting the IEP. The Fourth Circuit found that a procedural violation occurred because the placement had been predetermined. The court held that IEP objectives must be written before placement. *Spielberg*, 853 F.2d at 259. In *Deal*, the Sixth Circuit also found that a procedural violation had occurred. In that case, the school district determined that an autistic student should be placed in a school system program, and refused to consider the one-on-one in-home applied behavioral analysis ("ABA") program that the student's parents advocated. The evidence showed that "the School System had an unofficial policy of refusing to provide one-on-one ABA programs and that School System personnel thus did not have open minds and were not willing to consider the provision of such a program." *Deal*, 392 F.3d at 858.

The facts of this case are readily distinguishable from *Spielberg* and *Deal*. Here, unlike *Spielberg*, the MDT developed Anna's IEP and then DCPS recommended her placement. Unlike *Deal*, there is no evidence of any DCPS policy refusing placement in a particular program or at any particular school. The Schoenbachs contend that Cathy Berry, the DCPS placement specialist, started to research placement options before the April 29, 2005, IEP meeting and that this is evidence that DCPS predetermined the placement of Anna at McKinley. Ms. Berry testified that she researched DCPS placement options because she knew that the issue of Anna's placement would

be raised at the IEP meeting. AR at 159, Testimony of Berry. Ms. Berry learned of the new Asperger's Program at McKinley when she contacted Victoria Williams, the DCPS autism program coordinator. Under the District of Columbia Municipal Regulations, DCPS is not required to pay for a private placement if there is a public placement that would provide a FAPE. D.C. Mun. Regs. tit. 5, § 3018. Thus, Ms. Berry was required to determine if there were an appropriate public school placement before agreeing to a private placement. The evidence that she researched potential public placements demonstrates that Ms. Berry did her job, not that DCPS "predetermined" Anna's placement before the April 29, 2005, IEP meeting.

The Schoenbachs further argue that it was inappropriate to place Anna at McKinley when the majority of the MDT agreed that Nora was a better placement for Anna. There is no basis for this argument. In fact, the regulations do not require placement according to a majority vote of the MDT. The regulations provide:

> The IEP team should work toward a consensus, but the public agency has ultimate responsibility to ensure that the IEP includes the services that the child needs in order to receive FAPE. It is not appropriate to make IEP decisions based upon a majority "vote." If the team cannot reach consensus, the public agency must provide the parents with prior written notice of the agency's proposals or refusals, or both, regarding the child's educational program, and the parents have the right to seek resolution of any disagreements by initiating an impartial due process hearing.

34 C.F.R. Part 300, Appendix A — Notice of Interpretations, 64 Fed. Reg. 12,473 (1999).

The Schoenbachs contend that the hearing officer erred by failing to admit the May 31, 2005, report of Dr. Gilotty, Anna's psychologist. This report recommended placing Anna at

Nora. The report was not prepared until after the first day of the two-day due process hearing.[6] The Hearing Officer excluded the report because the Schoenbachs did not list Dr. Gilotty as a witness and did not intend to call her as a witness. Thus, Dr. Gilotty was not available for cross-examination.

The IDEA provides that at least five days before a due process hearing, each party shall disclose to all other parties all evaluations and recommendations they intend to use at the hearing. 20 U.S.C. § 1415(f)(2)(A). The Hearing Officer properly excluded Dr. Gilotty's report, as it was not disclosed prior to the due process hearing and she was not available for cross-examination.[7]

### B. Placement Reasonably Calculated to Provide Educational Benefit

The Schoenbachs argue that the placement at McKinley was not the best placement for Anna and that placement at Nora was more appropriate. The IDEA establishes a "basic floor of opportunity"; it does not require that a school provide the very best educational experience. *Rowley*, 458 U.S. at 201. School districts must provide "an educational benefit" by providing an appropriate

---

[6] The due process hearing commenced on May 6, 2005, and was continued to June 14, 2005, due to lengthy witness testimony.

[7] While the Schoenbachs asked this Court to consider Dr. Gilotty's written report, they did not ask the Court to hear any additional evidence. Even if they had, the Court would have excluded such testimony because in IDEA cases, courts exclude the testimony of those witnesses who testified, or who could have testified, before the hearing officer. *Springer v. Fairfax County Sch. Bd.*, 134 F.3d 659, 667 (4th Cir. 1998) (following *Town of Burlington v. Dept. of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984), *aff'd*, 471 U.S. 359 (1985)); *accord Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 901 (7th Cir. 1996); *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472-73 (9th Cir. 1993). "A lenient standard for additional evidence would have the consequence of making the whole IDEA process more time consuming, as parties scrambled to use the federal court proceeding to patch up holes in their administrative case." *Springer*, 134 F.3d at 667.

education. *Id*. School officials are not required to forego an appropriate public school placement for a private school placement. D.C. Mun. Regs. tit. 5, § 3018.

Further, the IDEA does not require an education designed to satisfy a parent's wishes. *Shaw*, 238 F. Supp. 2d at 139. In *Shaw*, the plaintiff was a disabled student who was provided with an IEP and placed in a special education program. *Id*. at 131. The student and her mother sued under the IDEA, contending that the student should be placed in a school chosen by them. *Id*. at 132. Because there was no allegation that the student was not receiving services identified in her IEP and there was no allegation that she was not benefitting from her school placement, the court found that school officials had provided a FAPE and thus had met their burden under the statute. *Shaw*, 238 F. Supp. 2d at 140. Here, there is no allegation that Anna would not receive the services identified by her IEP in the McKinley Program. As explained above, DCPS met its burden under the IDEA because placement in the McKinley Program was reasonably calculated to provide an educational benefit to Anna.

The Schoenbachs also argue that the IDEA requires that disabled students be placed in the least restrictive environment. "Mainstreaming of handicapped children into regular school programs where they might have opportunities to study and to socialize with nonhandicapped children is not only a laudable goal but is also a requirement of the Act." *Devries v. Fairfax County Sch. Bd.*, 882 F.2d 876, 878 (4th Cir. 1989). However, mainstreaming is not proper for every disabled child. *Id*. The key consideration is whether a proposed placement is appropriate under the IDEA. *Id*. (citing *Roncker v. Walter*, 700 F.2d 1058, 1063 (6th Cir. 1983)).

Parents are not "entitled to reimbursement for private school just because the private placement is less restrictive than the public school placement." *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 522 (6th Cir. 2003). The placement must provide an appropriate educational benefit. *Id*. (citing *Milford Sch. Dist. v. William F.*, No. 97-1506, 1997 WL 696108, at *6 (1st Cir. Nov. 10, 1997)). In *Berger*, the parents of a disabled child sought reimbursement of private school tuition. Despite having an IEP that indicated their son should receive certain special education services, the parents placed their son in a private school that did not provide special education services. The private school was "quieter" with "smaller classes and a better, more attentive teacher." *Id*. at 522. The court held that the parents were not entitled to reimbursement because the private school did not provide the services required under the IEP. *Id*. at 523. Without such services, the private school placement was not "consistent with the purposes of the IDEA." *Id*.

Like the parents in *Berger*, the Schoenbachs have placed their daughter in a private school that does not provide special education services because they believed that a smaller school setting was better for their child. Further, the Schoenbachs believed that, contrary to her IEP, Anna was ready to be mainstreamed full-time.[8] The Schoenbachs are not entitled to reimbursement for the cost of tuition at Nora because Nora does not provide the special education services required

---

[8] The McKinley Program does not necessarily provide a restrictive environment; the Program permits mainstreaming according to each child's ability. Ms. Williams and Lawrencia Cole-Brown, the special education coordinator at McKinley, both testified that the Program would be tailored to each child's individual needs. Tr. 218, 275 (students in McKinley's Asperger's Program could be included in the regular classrooms as they are "able and ready to go"). In the McKinley Program, students can attend class in the self-contained resource classroom full-time, or they can be fully included in regular classes, with the support of the special education resource teacher and assistants, or they can have a combination schedule. Tr. 218, 243, 274.

under Anna's IEP and without such services such private placement is not consistent with the purposes of the IDEA. *Id*. Accordingly, the Court will deny the Schoenbachs' motion for summary judgment and will grant DCPS's motion for summary judgment.

### IV.  CONCLUSION

For the reasons explained above, the Schoenbachs' motion for summary judgment [Dkt. #10] will be denied, and DCPS's motion for summary judgment [Dkt. #9] will be granted. A memorializing order accompanies this Memorandum Opinion.


Date:  June 12, 2006                                     /s/
                                              ROSEMARY M. COLLYER
                                              United States District Judge